IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

MAGALY MERCADO RIVERA, et al.

    Plaintiffs

v.                               CIVIL NO. 98-1769(JAG)

LOCTITE PUERTO RICO, INC., et al.

    Defendants

---

## OPINION AND ORDER

On July 7, 1998, plaintiff Magaly Mercado Rivera ("Mercado") brought this suit claiming that defendant Loctite Puerto Rico, Inc. (hereinafter "Loctite"), fired her in violation of Title I of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq. In addition to her ADA claim, Mercado brought forth several supplemental state law claims. (Docket No. 1.) On October 29, 1999, Loctite filed a motion for summary judgment. (Docket No. 33.) Mercado filed her response on December 14, 1999. (Docket No. 38.) Loctite filed a reply to Mercado's opposition on March 28, 2000. (Docket No. 46.) Thereafter, Mercado filed a surreply (Docket No. 55) and Loctite submitted a supplemental motion (Docket No. 61), which Mercado opposed. (Docket No. 65.) After a careful review of

2

the aforementioned motions the Court concludes that Loctite's motion for summary judgment should be granted.

## SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure, sets forth the standard for ruling on summary judgment motions: The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). The critical question is whether a genuine issue of material fact exists. A genuine issue exists if there is sufficient evidence supporting the claimed factual dispute to require a choice between the parties' differing versions of the truth at trial. Morris v. Government Dev. Bank of Puerto Rico, 27 F.3d 746, 748 (1st Cir. 1994); LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 841 (1st Cir. 1993), cert. denied, 511 U.S. 1018 (1994). A fact is material if it might affect the outcome of the suit under the governing law. Morrisey v. Boston Five Cents Sav. Bank, 54 F.3d 27, 31 (1st Cir. 1995); Maldonando Denis v. Castillo-Rodríguez, 23 F.3d 576, 581 (1st Cir. 1994). On a motion for summary judgment, the court must view all evidence and related inferences in the light most favorable to the nonmoving party. See

Springfield Terminal Ry. v. Canadian Pac. Ltd., 133 F.3d 103, 106 (1st Cir. 1997). Nonetheless, in employment discrimination cases, "'where elusive concepts such as motive or intent are at issue,' [the aforementioned] standard compels summary judgment if the non-moving party 'rests merely upon conclusory allegations, improbable inferences, and unsupported speculation.'" Feliciano De La Cruz v. El Conquistador Resort and Country Club, 218 F.3d 1,5 (1st Cir. 2000)(citing Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990)). See also Súarez v. Pueblo International, Inc., 229 F.3d 49, 53 (1st Cir. 2000).

## FACTUAL BACKGROUND

Loctite has its main offices in Connecticut, and is duly authorized to do business in Puerto Rico.[1] Loctite has a facility in Sabana Grande where industrial adhesives are manufactured. Izaida Rivera ("Rivera") is the Human Resources Manager of Loctite's plant in Puerto Rico.

Mercado began working at Loctite's Sabana Grande plant in August 1992 as a temporary employee in the bottling and packaging department. On March 15, 1993, Mercado became a regular employee

---

[1] Most of the material facts in this case are undisputed and are included in the proposed pretrial order submitted by the parties. (Docket No. 23.)

4

of Loctite, occupying the position of "B & P Packer."

## I. The Optic Neuritis Incident:

On February 25, 1994, Mercado suffered acute pain in her eyes, and therefore visited several doctors. She was diagnosed by Dr. Luis Serrano, a neurophtalmologist, as having suffered an optic neuritis attack with irreversible loss of vision in the right eye.[2] As a result of this incident, Mercado was absent from work from February 25 until April 30, 1994. (Docket No. 33, Exhibit 1, Employee Time Records), and received short term disability benefits for the entire period.

## II. Mercado's request for reasonable accommodation:

Mercado was released to return to work by her doctor in May 1994. Dr. Serrano, however, recommended that Mercado do not work the night shift.[3] Loctite agreed. From her return to work in May 1994, to the last day she worked on April 28, 1995, Mercado was the only manufacturing employee who did not rotate shifts, working exclusively in the day shift.

---

[2] After this incident, Mercado was subjected to several magnetic resonance studies to try to rule out multiple sclerosis. She was not diagnosed with multiple sclerosis at the time.

[3] Loctite's manufacturing and maintenance employees, such as Mercado, work on rotating shifts under the direction of a fixed group supervisor.

5

### III. *The March 1995 work accident:*

On March 16, 1995, Mercado reported to the State Insurance Fund claiming that acid fell in her right eye. The State Insurance Fund determined that she suffered chemical conjunctivitis, and as a result she took sick leave for five days, returning to work on March 22, 1995. (Docket No. 33, Exhibit 6.)

### IV. *The Multiple Sclerosis episode of April 1995:*

Sometime in April of 1995, Mercado went to the emergency room of Hospital de la Concepción in San Germán, complaining of pain and numbness in her right arm. She returned the next day because she had difficulty speaking and was experiencing cervical pain. She was diagnosed as suffering from a severe muscle spasm. As a result of this incident, Mercado requested non-work disability benefits and received 100% of her pay for the duration of her absence.[4] Mercado received short-term disability benefits for six months, up until the benefits were exhausted.

The parties differ greatly as to the medical evidence from this point in the chronology, particularly as to which doctor was

---

[4] Dr. Nuñez filed the medical report for Mercado's short term disability benefits claim on May 17, 1995. Even though the medical findings and the veracity of Dr. Nuñez'z claims are disputed, the fact is that Loctite did believe that Mercado was unable to work and did approve her short-term disability benefits.

6

caring for Mercado and what was the exact diagnosis. These facts, however, are not material to the dispute, since it became clear at some point while Mercado was receiving short term disability benefits that she had multiple sclerosis.[5]

## V. *The conditional release to return to work*

On September 27, 1995, Dr. Nuñez released Mercado to return to work with a diagnosis of multiple sclerosis. Mercado delivered the aforementioned doctor's certificate on or about October 2, 1995, and sought reinstatement. Mercado also delivered to Loctite a second document from Dr. Nuñez, stating that Mercado was suffering from multiple sclerosis, that her symptoms were in remission, and that she was protected under the ADA. The doctor further recommended that Mercado be relocated from the production floor to an administrative position. (Docket No. 33, Exhibit 8.)

## VI. *Interactive process to determine reasonable accommodation:*

Given Dr. Nuñez's recommendation, Loctite contends that its Human Resources officers and Mercado's supervisors tried to

---

[5] There is an inordinate amount of medical evidence in the record as to the different doctors that Mercado visited during this period, the tests she was subjected to, and the differing diagnosis of several physicians. Nonetheless, the parties do not dispute that by the time the short term disability period expired, Mercado and Loctite had knowledge of Mercado's condition, i.e., multiple sclerosis.

ascertain whether there was an administrative position for which Mercado was qualified. (Docket No. 33, Exhibit 12, at 87-88.) Loctite asserts that the only administrative position available at the time was that of receptionist, and that Mercado was not qualified for the position because she did not have an oral command of the English language.

The record shows that Rivera's attempt to question Dr. Nuñez as to Mercado's certificate of release were thwarted by the doctor because he understood the information to be confidential due to his doctor/patient relationship with Mercado. Finally, on November 30, 1995, several members of Loctite's Human Resources officers met to discuss Mercado's case. Loctite wrote to Mercado on December 18, 1995, stating, *inter alia*, that it was trying to place her in a different position, that she needed to fill out the enclosed authorization form to obtain a release of her medical records, and that at the time there was not a position available for which she was qualified. It is undisputed that Mercado never filled out the authorization form enclosed in the December 18, 1995 letter.

Thereafter, on March 26, 1996, Mercado contacted Loctite through an attorney, claiming to have a disability and requesting accommodation under the ADA. On April 8, 1996, Rivera sent a letter to Mercado's attorney stating that Mercado's failure to

8

submit a neurological examination resulted in her termination.

### VII. *Mercado's Request for Social Security Benefits*:

Mercado requested social security disability benefits on December 11, 1996. (Docket No. 61.) The Social Security Administration found that Mercado was unable to work due to her physical disability, and found her to be mentally incompetent since March 1, 1996. (Docket No. 61, Exhibit 21.)

## ANALYSIS

"To state a prima facie claim of disability discrimination under the ADA, a plaintiff must prove by a preponderance of the evidence that: (1) she was disabled within the meaning of the ADA; (2) she was a qualified individual; and (3) she was discharged because of her disability." Phelps v. Optima Health, Inc., 251 F.3d 21, 24 (1st Cir. 2001)(citing Ward v. Mass. Health Research Inst., Inc., 209 F.3d 29, 32-33 (1st Cir. 2000)).

### A. *Disabled within the meaning of the Act*

In most ADA cases the issue of whether a plaintiff is disabled within the meaning of the Act (i.e., the first prong ADA's *prima facie* case), is usually conceded for analytical purposes. (But cf. Gelabert-Ladenheim v. American Airlines, Inc., 252 F.3d 54, 57-58 (1st Cir. 2001)(where Court found that plaintiff was not disabled under the ADA)). Here, it is undisputed that Mercado suffered an

9

optic neuritis attack on February 1994 which caused irreversible loss of vision in her right eye. It is also uncontroverted that Loctite provided Mercado with a reasonable accommodation when it allowed Mercado to work exclusively during the day shift after the date of the aforementioned attack and until the date of her termination. The disability relevant to this analysis, however, is Mercado's diagnosis of multiple sclerosis, which occurred sometime during the time when Mercado was taking short-term disability benefits (up until September of 1995). Loctite contends that Mercado's multiple sclerosis diagnosis does not rise to the level of a disability because, according to her physician, her symptoms were in remission. The medical evidence in the record, however, viewed in the light most favorable to Mercado, sustains a finding that her diagnosis of multiple sclerosis constitutes a disability under the ADA.

**B. *Was Mercado a qualified individual under the Act*:**

The crux of this case is whether or not Mercado was a qualified individual under the ADA at the time that she allegedly requested a reasonable accommodation. "A qualified individual under the ADA is one 'able to perform the essential functions of [her position] with or without reasonable accommodation.' . . . [The] analysis of whether an individual is qualified occurs in two

steps: first, whether the individual can perform the essential functions of her position; and second, if she is unable to perform those essential functions, whether any reasonable accommodation by her employer would allow her to do so." Phelps, 251 F.3d at 25 (citing Ward, 209 F.3d at 33). In other words, to establish the second prong of her *prima facie* case, Mercado must set forth evidence that she could perform the essential functions of her job with or without reasonable accommodation. This she has failed to do.

Late in September 1995, when Mercado sought reinstatement after her six month short-term disability period expired, she submitted to Loctite a request by her doctor that she be placed in an administrative position, while at the same time stating that she was not disabled to work because her symptoms were in remission. Mercado cannot have her cake and eat it too. It is evident, by the admissions made by Mercado's own physician, that she was unable to perform the essential functions of her job as packer. This is precisely why the physician sends a written recommendation to Loctite that Mercado be relocated.

Mercado bears the burden of proposing an accommodation that would enable her to perform her "job effectively and is, at least on the face of things, reasonable." See Kvorjak v. Maine, 259 F.3d

11

48, 55 (1st Cir. 2001). Mercado requested for an accommodation when she asked Loctite, by way of her physician's note, to be relocated to an administrative position. Loctite argues, and plaintiff does not contest the fact, that at the time of Mercado's request for an accommodation, there was not an administrative position available for which Mercado was qualified. "An employer is not required by the ADA to create a new job for an employee, nor to re-establish a position that no longer exists." Phelps, 251 F.3d at 27 (citing Hoskins v. Oakland County Sheriff's Dep't, 227 F.3d 719, 730 (6th Cir. 2000)); Aka v. Wash. Hosp. Ctr., 156 F.3d 1284, 1305 (D.C. Cir. 1998); Hendricks-Robinson v. Excel Corp., 154 F.3d 685, 697 (7th Cir. 1998). Because Mercado has failed to set forth proof of the "reasonableness" of her proposed accommodation, her ADA claim must fail.

There are other independent facts that warrant dismissal of Mercado's ADA claim. First, there is ample evidence in the record suggesting that Mercado was terminated after she failed to engage in a meaningful interactive process with Loctite in order to find a reasonable accommodation. See, e.g., Kvorjak, 259 F.3d 48 at 52-54; Phelps, 251 F.3d at 27-28 (discussing the duties of both employees and employers to engage in an interactive process). It is uncontested that Loctite asked Mercado to fill out an

12

authorization form to obtain a release of her medical records in an effort to accommodate her, and that Mercado never filled it out.

Moreover, it is undisputed that Mercado has been found to be totally disabled to work by the Social Security Administration as of March 1, 1996. True enough, a claim of disability for purposes of social security benefits does not necessarily preclude Mercado's ability to argue that she is capable of performing her job with reasonable accommodation. However, to defeat Loctite's motion for summary judgment, Mercado must explain why the representation of total disability she made to the Social Security Administration is consistent with the claim that she could perform the essential functions of her job at Loctite with reasonable accommodation. See Sullivan v. Raytheon Co., 262 F.3d 41, 47 (1st Cir. 2001). Mercado has offered no evidence to explain this apparent discrepancy.

## CONCLUSION

Mercado has failed to establish a *prima facie* case under the ADA because she has failed to set forth proof to raise a genuine issue of material fact as to whether or not she is a qualified individual as defined in the Act. In addition, there is proof in the record that Mercado failed to enter into a good faith interactive process with Loctite in an effort to determine whether a reasonable accommodation was viable, and Mercado has not

13

presented evidence to explain the apparent contradiction between the findings of the SSA's findings and her current claims under the ADA.

In view of the aforementioned, Loctite's Motion for Summary Judgment (**Docket No. 33**) is hereby **GRANTED**. Mercado's ADA claim is **DISMISSED WITH PREJUDICE**. The supplemental law claims are **DISMISSED WITHOUT PREJUDICE**. Judgment will be entered accordingly.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 9th day of September of 2002.

JAY A. GARCIA-GREGORY
U.S. District Judge